UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>DAVID ASHTON LONG,<br><br>       Defendant. | CASE NO. 3:10-CR-00072-TMB<br><br>**FINAL REPORT AND RECOMMENDATION[1] REGARDING DEFENDANT'S MOTION TO DISMISS [Doc. 41] AND MOTION FOR EVIDENTIARY HEARING [Doc. 44]** |

## I. MOTIONS PRESENTED

  Defendant David Ashton Long (hereafter Long) filed a motion to dismiss (Doc. 41) and a related motion for an evidentiary hearing based on an allegation of prosecutorial misconduct (Doc. 44). He alleges that the Stephan A. Collins, the Assistant United States Attorney in this case, and Daniel R. Cooper, the Assistant United States Attorney prosecuting a defendant by the name of Sabil Mujahid in an unrelated case (Case No. 3:10-CR-00091-HRH), approached his cell mate in mid-February and asked the cell mate to wear a wire or otherwise obtain statements and information from Long. Long argues that such conduct is in violation of Massiah v. United States, 377 U.S. 201, 206 (1964) and that the Court should exercise its supervisory powers to dismiss the indictment against him.

  The original motion was only supported by an affidavit from Long's attorney, Ms. Sue

---

[1] This report and recommendation is being issued as a final report and recommendation. Pursuant to Fed. R. Crim. P. 59(b)(3), any objections will be considered by the District Court Judge who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.

1

Ellen Tatter. In her affidavit, she attests that Long relayed this information to her and that she recounted the facts to the best of her ability.

Before filing a substantive response, the Government filed a motion to dismiss Long's motion at Docket 46. It asserted that Long's motion was unsupported and should be stricken pursuant to Local Rule 7.1(3).[2] In response, Long's counsel filed an affidavit handwritten by Long at Docket 47-1. In the affidavit, Long asserts that his cell mate, referred to here as John Doe 1, told him about the prosecutors' visit and alleged request that he wear a wire to obtain statements from Long.

The Government then filed a substantive opposition to Long's motion to dismiss and his motion for an evidentiary hearing at Docket 48. The Government denies the allegations and includes affidavits from three attorneys, all of whom deny any meeting with John Doe 1.

Counsel for John Doe 1, Samuel Fortier, filed an opposition to the motion and opposed any subpoena to John Doe 1. Mr. Fortier argued no meeting between Mr. Cooper, Mr. Collins and Mr. Fortier's associate, Ms. Lauesen, took place. (Doc. 56). In his affidavit, Mr. Fortier explained that his client is in custody for a state crime and is represented in that matter by Rex Butler. He stated John Doe 1 has never requested or been offered a deal by the U.S. Attorney's Office and that he is a victim/witness in the federal Mujahid case. (Doc. 58). Mr. Fortier theorized in his motion that Mr. Long's affidavit was an effort to label John Doe 1 as a snitch in the Cook Inlet Pretrial Facility in an effort to assist Mujahid. No evidentiary support for this theory was provided. Neither the affidavit of Mr. Fortier nor the affidavit of Ms. Lauesen include any report of statements or denials of the conversation with Long by John Doe 1. John Doe 1 did

---

[2] That motion will be addressed by this Court in a separate order.

not provide an affidavit.

## II. AFFIDAVITS SUBMITTED

In the original motion, Ms. Tatter reported a conversation with Long in which he asserted that John Doe 1 told him Mr. Collins, Mr. Cooper, and an attorney named "Rachel" visited him. John Doe 1 is an alleged victim in the Government's assault case against Mujahid. The motion alleges that the attorneys asked John Doe 1 to wear a wire and obtain statements from Long about this case. In the motion, counsel stresses one fact in particular: that John Doe 1 told Long the attorneys showed him a picture of Long and his daughter and that Long had a goatee in the picture and his daughter was dressed in a military uniform. The defense argues that this detail demonstrates the truthfulness of Long's assertions because Long did not have a goatee while in jail and Long's daughter is in the military, thus assuming that there was no way John Doe 1 could have known this information about Long unless what John Doe said was true.

In Long's supporting affidavit, he asserts that on February 13, 2011, John Doe 1 told him that John Doe 1's attorney, Rachel, and prosecutors Collins and Cooper visited John Doe 1. He asserts that John Doe told him that the attorneys asked him about Long and showed him a picture of Long and a picture of his daughter. Unlike Ms. Tatter's recitation of the facts, Long's affidavit does not describe the photograph in detail and does not assert that Long had a goatee in the photograph or that his daughter was in a military uniform. The affidavit says that John Doe 1 told Long the prosecutors asked him to wear a wire to record Long's conversations in jail and instructed him to ask Long about his case, his supplier, and any contraband. The affidavit also says that John Doe 1 was going to write a letter, but no such letter has been provided to the Court.

3

To rebut these allegations, the Government submitted three affidavits from the three attorneys alleged to have contacted John Doe 1 in mid-February. Mr. Collins states in his affidavit that prior to this motion being filed, he was not aware of any particular facts about the case against Mujahid and thus did not know that there were victims identified as John Doe and did not know these victims by name. He asserts that prior to this motion being filed, he had never heard of John Doe 1—Mr. Cooper told him John Doe 1's real name when this motion was filed and that was the first time he ever heard of such a person. He states that John Doe 1 has never contacted him and that he has never met or talked to John Doe 1. He states that he has never gone to, or even thought about going to the Anchorage jail, either by himself or in the company of anyone, including Mr. Cooper or John Doe's attorney, Rachel Lauesen, to meet John Doe 1. (Doc. 48-1).

He asserts that he did not know where Long was being held and did not know that Long and John Doe 1 had ever been cell mates until the filing of this motion. He also asserts that prior to this motion being filed, he has never discussed the case against Long with Mr. Cooper, and that prior to this motion, he has never had any telephone contact with Ms. Lauesen or met her at the Anchorage jail. He concludes his affidavit by asserting that in his entire career, he has never asked a prisoner to record or otherwise engage another prisoner in conversation to obtain information about the other prisoner's case.

Mr. Cooper states in his affidavit that he has met John Doe 1 twice in preparation for his case against Mujahid. He asserts that both times he was accompanied by Assistant United States Attorney Audrey Renschen and Federal Bureau of Investigations Special Agent Jolene Goeden. He asserts that prior to this motion being filed, he had never heard of Long or of the case against

4

him and did not know Mr. Collins was involved in such a case. He says that prior to this motion being filed, he did not know John Doe 1 had ever been cell mates with Long. Mr. Cooper asserts that he talked to Ms. Lauesen in connection with the Mujahid case on March 4, 2011 but did not meet her until March 10, 2011. He asserts that he has never met with John Doe 1 at the Anchorage Jail by himself or in the company of Mr. Collins or Rachel Lauesen to ask John Doe 1 to wear a wire or to otherwise engage Long in conversation. He asserts that he was never at the Anchorage jail on February 13, 2011. He attests that in his entire career as a prosecutor he has never asked a prisoner to record or otherwise engage another prisoner in conversation to obtain information about the other prisoner's case. (Doc. 48-2).

Rachel Lauesen also submitted an affidavit. (Doc. 48-3). She asserts that she works for Fortier & Mikko, P.C. and that her firm has entered a Limited Entry of Appearance on behalf of John Doe 1 in the case against Mujahid, because John Doe 1 is a victim/witness in that case and they were retained to protect his safety and privacy. She states that she has reviewed Long's motion to dismiss and the memorandum in support and asserts that Long's allegations are false. She asserts that the events described in Long's affidavit never happened. She says that she has visited John Doe 1 at the Anchorage Jail about four times and that the only person ever present at these meetings with John Doe 1 was Samuel Fortier, a partner at Fortier & Mikko, P.C. She asserts that she did not meet John Doe 1 with any prosecutor or with any other lawyer except Mr. Fortier. She says that John Doe 1 never mentioned Long to her and that prior to this motion being filed, she had never heard of Long. She attests that she has never asked anyone to wear a wire and that she never asked John Doe 1 to wear a wire. (Doc. 48-3).

5

## III.  DISCUSSION

Long asserts that the prosecutor, Mr. Collins, attempted to obtain statements from him without counsel present.  He argues that this action was an attempted violation of his right to counsel and due process.  He cites to Massiah v. United States, 377 U.S. 201, 206 (1964).  In Massiah, the defendant had made incriminating statements to his co-defendant after their indictment and their release on bail.  The defendant did not know that the co-defendant had agreed to cooperate with the government and did not know that government agents were listening to the conversation, with permission of the co-defendant, through a secret radio transmitter device.  Id. at 202-03.  The government used those statements against the defendant at trial.  The Court held that the government violated the defendant's Sixth Amendment right to counsel when it used the co-defendant as an informant to "deliberately elicit" incriminating statements from him after his indictment and without the presence of defendant's counsel.  Id. at 206.  The holding has been extended to the use of jailhouse informants who relay incriminating statements by a defendant in pre-trial custody to the government.  See United States v. Henry, 447 U.S. 264 (1980); Maine v. Moulton, 474 U.S. 159 (1985).

The usual remedy for a Massiah violation of the right to counsel is suppression of the material obtained through the illegal interrogation.  See United States v. Bagley, 641 F.2d 1235, 1238 (9th Cir. 1981); United States v. Kimball, 884 F.2d 1274, 1280 (9th Cir. 1989).  In this case, there is only an allegation of an attempt to get John Doe 1 to wear a wire and obtain statements from Long.  Long does not allege that he discussed his case with John Doe 1 or that John Doe 1 in fact obtained statements from him.  There is nothing on the record to demonstrate that an actual violation of Long's right to counsel occurred and thus there are no statements to

6

suppress.

Long recognizes that suppression may not be an available remedy for the allegations raised in this motion, but he asks the Court to instead dismiss the indictment in this case based on the prosecutor's attempt to violate his constitutional rights. To warrant a dismissal of this indictment, Long must demonstrate that either 1) the prosecutors engaged in misconduct amounting to a due process violation; or 2) the prosecutor's misconduct was flagrant, wilful, or conducted in bad faith. United States v. Chapman, 524 F.3d 1073, 1084-85 (9th Cir. 2008). A court may dismiss an indictment for flagrant, wilful, or bad faith prosecutorial misconduct pursuant to its supervisory powers but only when the defendant suffers "substantial prejudice." Id. at 1087.

This Court finds that Long has not proven such misconduct or prejudice. The Government has responded to Long's motion with affidavits denying the allegations. All three attorneys, including John Doe 1's attorney, have attested to the fact that no such meeting occurred. The affidavits convincingly demonstrate that the allegations are false. The prosecutor in this case Collins, did not know John Doe 1 and did not know that Long was cell mates with John Doe 1. He did not approach John Doe 1 at the Anchorage Jail in February or at any other time or place. He has never asked anyone, including John Doe 1, to wear a wire or otherwise obtain statements against another prisoner on behalf of the Government. Mr. Cooper's affidavit and Ms. Lauesen's affidavit corroborate Mr. Collins's assertions. In addition, because Long only alleges Mr. Collins *attempted* to obtain statements, there can be no finding of substantial prejudice.

The only principal in this drama who has not provided the Court with an affidavit is John

Doe 1. Thus, it is impossible on this record to conclude whether John Doe 1 made the false accusations against the prosecutors when speaking to Long or whether Long fabricated the false accusations and attributed them to John Doe 1. But this Court need not decide the issue for purposes of this motion. The Court concludes no misconduct occurred. There is no evidence to suppress and the severe remedy of dismissal is not warranted.

This Court has concluded that the events alleged in Long's motion are false based on the three affidavits filed and without an evidentiary hearing. "[A]n evidentiary hearing is generally only required if the papers submitted in support of and in opposition to the motion are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that there are contested issue of fact going to . . . the resolution of other issues necessary to decide the motion." United States v. Cheely, 814 F.Supp. 1430, 1436 (D. Alaska 1992). The papers must demonstrate to the court that there is a substantial claim presented to it. Cohen v. United States, 378 F.2d 751, 760-61 (9th Cir. 1967).

In this case, the Court has reviewed the affidavits and concludes an evidentiary hearing is not warranted. Long's motion contains the hearsay statements of John Doe 1, and when weighed against the three credible and convincing affidavits of attorneys who are officers of the Court and who assert that no such meeting with or request of John Doe 1 took place, Long has failed to present detailed, nonconjectural, reliable facts to warrant the use of the Court's time and resources in an evidentiary hearing.

Furthermore, even if the Court were to take Long's allegations as true, he would still not be entitled to the standard relief of suppression for such conduct because he does not allege that any statements were actually obtained from him without counsel present. He also would not be

8

entitled to dismissal of the indictment as a remedy because, even if Long's allegations were true, because he has failed to allege any prejudice from such conduct. Thus, an *attempt* to have a cell mate obtain statements from a defendant without counsel does not warrant dismissal pursuant to the Court's supervisory powers. Because Long would not be entitled to the relief requested as a matter of law, no evidentiary hearing is required. See United States v. Irwin, 612 F.2d 1182, 1187 (9th Cir. 1980) (stating that the court should consider whether the facts, if resolved in favor of the defendant, would entitle him to relief when determining whether to grant an evidentiary hearing, but also stating that if the affidavits show that as a matter of law the defendant is or is not entitled to relief, no evidentiary hearing is required).

## IV. CONCLUSION

This Court respectfully recommends that Long's Motion to Dismiss at Docket 41 and Motion for Evidentiary Hearing at Docket 44 be DENIED.

DATED this 5th day of April, 2011, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge

Pursuant to Fed. R. Crim. P. 59(b)(2) and D.Ak.L.M.R. 6(a), a party seeking to object to this final finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, April 8, 2011.** Pursuant to Fed. R. Crim. P. 59(b)(3), objections will be first considered by the District Court Judge who will then accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-89 (9th Cir. 1980), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and

shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, April 13, 2011** The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a). **The shortened objection and response deadlines are necessary due to the looming trial date. D.AK. L.M.R. 6(a) authorizes the court to alter the standard objection deadlines.**